# EXHIBIT A



ELECTRONICALLY FILED
1/9/2024 6:10 PM
03-CV-2024-900052.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
GINA J. ISHMAN, CLERK

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| **BAptist health,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. _____** |
| v. ) | |
| ) | |
| **HEALTH VALUE MANAGEMENT, INC.,** ) | |
| **HUMANA INSURANCE COMPANY;** ) | |
| **HUMANA HEALTH PLAN, INC.;** ) | |
| Defendants 1 through 4, whether singular ) | |
| Or plural, those affiliates of defendants ) | |
| Who underwrite or administer health plans, ) | |
| All of whose names and true legal identities are ) | |
| Otherwise unknown at this time, but who ) | |
| Will be substituted by amendment when ) | |
| ascertained; individually and jointly, ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

The Health Care Authority for Baptist Health, An Affiliate of UAB Health System ("Baptist Health") brings this action against Health Value Management, Inc. d/b/a ChoiceCare Network; Humana Insurance Company; Humana Health Plan, Inc.; and fictitious defendants 1–4 (collectively "Humana"). In support of its complaint, Baptist Health states as follows:

### NATURE OF THE CASE

1. Baptist Health and Humana are and at all relevant times were parties to a Medicare Advantage PPO Agreement to Participate, as extended by a Letter of Intent for Covered Services Provided to Humana Medicare Advantage and Group Retiree Members (together, the "Agreement"). The Agreement is attached to this Complaint as Exhibits 1 and 2, respectively.

2. Under the Agreement, Humana reimburses Baptist Health for services rendered to its Medicare Advantage members based on the "Medicare allowable amount in effect as of the date such services are rendered and in accordance with Medicare Advantage laws, rules, and

regulations." Ex. 1 at Attachment A; *see also* Ex. 2 at ¶¶ 2, 3. Those "services" include certain outpatient prescription drugs provided under a federal pricing program to ensure access to care for underserved communities. The United States Supreme Court recently held that the "Medicare allowable amount" for those outpatient prescription drugs was unlawfully reduced by the Centers for Medicare and Medicaid Services ("CMS") for nearly five years. As a result of this decision, CMS will pay impacted hospitals a lump sum to make up the difference between what CMS actually paid during those five years and the amount that should have been paid if the rates had not been illegally changed.

3. Because Humana reimbursed Baptist Health an amount based on the "Medicare allowable amount," which included the illegal CMS rates in effect from 2018 to 2022, and has refused to reimburse Baptist Health according to CMS's repayment model, it has breached its obligations to pay Baptist Health the proper, legal amount for its services.

4. To date, Humana continues to enjoy this windfall and has not taken steps to compensate Baptist Health for its underpayment. Baptist Health's claims arise from Humana's failure to remedy this unlawful underpayment.

## PARTIES

5. Plaintiff Baptist Health is an Alabama corporation with its principal place of business in Alabama.

6. Defendant Health Value Management, Inc. d/b/a ChoiceCare Network is a Delaware corporation with its principal place of business in Kentucky.

7. Defendant Humana Insurance Company is a Wisconsin corporation with its principal place of business in Wisconsin.

8. Defendant Humana Health Plan, Inc. is a Kentucky corporation with its principal

2

place of business in Kentucky.

9. Defendants 1–4, whether singular or plural, are those affiliates of Defendants Health Value Management, Inc.; Humana Insurance Company; and Humana Health Plan, Inc. who underwrite or administer health plans.

**JURISDICTION AND VENUE**

10. Jurisdiction is proper in this Court because Baptist Health's principal place of business is in Alabama, and because a substantial part of the events and omissions, including Defendant's conduct, described in the Complaint occurred in Alabama.

11. Venue is proper in this Court because a substantial portion of the acts on which the action is founded occurred in Montgomery County, Alabama.

**FACTS**

12. Baptist Health is the largest medical provider in Montgomery, Alabama. It provides patients with a complete range of primary and specialty care services, including award-winning women's health services. Through its use of cutting-edge technology, highly skilled professional staff, and personalized care, Baptist Health is the comprehensive resource for family healthcare in central Alabama. As part of its mission, Baptist Health provides critical health care services to the most vulnerable and underserved patient populations in the area—including a disproportionate number of low-income and vulnerable patients.

13. Baptist Health entered into the Agreement with Humana on behalf of two of its hospitals, Baptist Medical Center South and Baptist Medical Center East, both of which participate in the 340B Drug Pricing Program.

3

*Baptist Health and the 340B Drug Pricing Program*

14. Congress created the 340B Drug Pricing Program (the "340B Program") to protect hospitals like Baptist Medical Center South and Baptist Medical Center East serving vulnerable communities and underserved populations from escalating drug prices. The program allows qualifying hospitals to stretch their resources, thereby allowing them to reach more patients and provide more comprehensive services.

15. The 340B Program requires drug manufacturers to provide prescription drugs at a reduced price to hospitals like Baptist Medical Center South and Baptist Medical Center East that provide necessary health care services to historically underserved patient populations, including rural and low-income communities. *See* 42 U.S.C. § 256b. Baptist Health leverages the savings that it receives through the 340B Program to offset the significant expense involved in serving such a significant number of low-income and uninsured patients and to ensure that those underserved patient groups have access to care.

16. Baptist Health's ability to care for those underserved, low-income patient groups was imperiled in 2018 when CMS slashed the Medicare drug reimbursement rates for hospitals participating in the 340B Program.

*CMS Unlawfully Changes Reimbursement Rates for 340B Hospitals*

17. Pursuant to the Medicare statute, the Department of Health and Human Services ("HHS") must reimburse hospitals for certain outpatient prescription drugs that hospitals provide to Medicare patients. CMS, a division of HHS, annually sets the rates at which it reimburses for those prescription drugs in the Outpatient Prospective Payment System ("Outpatient PPS" or

4

"OPPS") final rule.[1] CMS may set those rates in one of two ways. Under the first option, CMS may conduct a survey of hospitals' acquisition costs for each covered drug and set reimbursement rates based on the hospitals' average acquisition cost. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). If CMS has conducted such a survey, it may vary reimbursement rates for different groups of hospitals (*i.e.*, it may differentiate between 340B hospitals and non-340B hospitals). *See id*. Under the second option, if CMS does not conduct a survey of hospitals' acquisition costs, it must set reimbursement rates based on the average sales price charged by drug manufacturers (subject to certain adjustments), which the statute sets as 106% of the drug's average sales price. *Id*. § 1395*l*(t)(14)(A)(iii)(II). CMS *may not* vary reimbursement rates for different groups of hospitals without conducting a survey of acquisition costs (*i.e.*, it may not differentiate between 340B hospitals and non-340B hospitals). *See id*.

18. Until 2018, under the Outpatient PPS, CMS consistently set reimbursement rates for each drug at about 106% of the drug's average sales price and never varied reimbursement rates by hospital group. *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 729 (2022). That changed in 2018. In 2018—despite the fact that it did not conduct a survey of acquisition costs—CMS substantially reduced pharmaceutical reimbursement rates under the Outpatient PPS from 106% to 77.5% of the average drug sales price for 340B hospitals *only*. *Id*. at 729–31.

19. CMS continued to set drug reimbursement rates for 340B hospitals that way under the Outpatient PPS until 2022. *See* Medicare Program; Hospital Outpatient Prospective Payment

---

[1] CMS calculates the amount owed to hospitals for rendering outpatient services to Medicare beneficiaries under a system known as the "Outpatient Prospective Payment System," or "Outpatient PPS," or "OPPS." The Medicare Act requires CMS to annually review and update the payment rates for all services payable under the Outpatient PPS, including for prescription drugs, through notice-and-comment rulemaking. CMS does so through publication of the Outpatient PPS proposed and final rules.

5

System: Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018-2022, 88 Fed. Reg. 77150.

20. But providers fought back. The American Hospital Association, hospital trade groups, and individual hospitals filed lawsuits against CMS, arguing that the agency had unlawfully deprived 340B hospitals of $1.6 billion in annual Medicare payments. In June 2022, the United States Supreme Court agreed and held that CMS exceeded its authority when it reduced drug reimbursement rates for 340B hospitals only without conducting a survey. *See Becerra*, 596 U.S. at 736, 739. The United States Supreme Court found that the reduced rates were, therefore, unlawful. *See id*.

21. As a result, CMS reversed its illegal reimbursement formula on September 27, 2022 and returned to the default 106% reimbursement rate. 87 Fed. Reg. 71970. But that reversal did not remedy the fact that 340B hospitals like Baptist Health had been underpaid millions of dollars between January 1, 2018, and September 27, 2022.

22. To remedy the significant injury done to 340B hospitals, CMS has issued a Final Rule, CMS-1793-F, through which CMS announced that it will make one-time lump sum payments to each 340B hospital equal to "the difference between what they were paid for 340B drugs" from 2018 to 2022 and "what they would have been paid had the 340B payment policy not applied." Medicare Program; Hospital Outpatient Prospective Payment System: Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018-2022, 88 Fed. Reg. 77150, 77156. When this Final Rule promulgated by CMS becomes effective on January 8, 2024, that remedy "can be viewed as a retroactive adjustment to the payment rates for each of 2018 through 2022," as authorized by CMS's retroactive rulemaking authority under 42 U.S.C. § 1395hh(e)(1)(A). *Id.* at 77174.

*Medicare Advantage Organizations*

23. The Medicare Advantage program provides Medicare-eligible individuals with a private-sector alternative to traditional Medicare. It is estimated that more than 40% of Medicare beneficiaries are enrolled in Medicare Advantage Plans.

24. Under the Medicare Advantage program, private health insurance companies like Humana, commonly referred to as "Medicare Advantage Organizations" or "MAOs," contract with CMS to provide the same or more benefits as traditional Medicare. *See* 42 U.S.C. 1395w-21, 22; Ex. 1 at § 2.1.

25. CMS pays each MAO a pre-determined monthly benchmark amount based on the counties that the MAO's plans serve. *See* 42 C.F.R. § 422.304(a). Each MAO submits annual plan-specific bids to CMS that estimate the cost of providing traditional Medicare benefits in those counties. *See* 42 C.F.R. § 422.254. CMS then compares those bids to its pre-determined regional benchmark amounts. *See id.* CMS pays each MAO based on the pre-determined monthly benchmark amounts. *See* 42 C.F.R. § 422.304(a). If an MAO's bid is less than the relevant benchmark amount, the MAO still gets to keep the benchmark amount subject to certain restrictions on how the "rebate" may be used. *See* 42 C.F.R. § 422.264(b), (d); *id.* § 422.266. If an MAO's bid is greater than the relevant benchmark amount, then the MAO may look to its enrollees and charge enrollees a premium equal to the difference between the bid amount and the benchmark amount. 42 C.F.R. § 422.262(a)(2).

26. In turn, the MAOs contract with healthcare providers, like Baptist Health, to furnish benefits to the MAOs' enrollees. *See* 42 U.S.C. § 1395w-25(b)(4). Among other terms, these contracts include the methodology for calculating reimbursement rates MAOs will pay to

7

providers for health care, including services and prescription drugs, etc., rendered and provided to the MAO's enrollees.

***The Agreement Between Baptist Health and Humana and Humana's Failure to Pay the Required Amounts***

27. Baptist Health and Humana entered into the original Agreement on May 1, 2005, and extended it by a Letter of Intent on January 1, 2020. *See* Ex. 1, 2. The Agreement establishes terms for making Baptist Health's hospitals in-network facilities for Humana's Medicare Advantage plans. *See* Ex. 1.

28. Pursuant to the Agreement, Humana initially agreed to pay Baptist Health ▮▮▮▮▮▮▮▮▮▮▮▮▮ of Hospital's Medicare allowable amount in effect as of the date such services are rendered and in accordance with Medicare Advantage laws, rules and regulations. . ." Ex. 1 at Attachment A. Then, effective January 1, 2020, Humana agreed to pay Baptist Health ▮▮▮▮ of the Provider-specific Medicare allowable rate in effect as of the date such services are rendered and in accordance with Medicare rules and regulations" for Medicare Advantage members not participating in Humana's Public Education Employees' Health Insurance Plan ("PEEHIP") and ▮▮▮▮ of the Provider-specific Medicare allowable rate" for PEEHIP members. Ex. 1 at ¶¶ 1, 2.

29. In other words, Humana's payments to Baptist Health for outpatient prescription drugs under the Agreement are based entirely on the lawful rates set by CMS for traditional Medicare.

30. Beginning on January 1, 2018, and continuing to September 27, 2022, CMS reduced the Medicare rate for certain drugs acquired through the 340B program from 106% of the average sales price for that drug to 77.5%. The reduction was declared unlawful by *Becerra* and, on September 28, 2022, CMS adjusted it back to 106% in order to comply with the statutory

8

requirements for determining 340B drug pricing reimbursement going forward. CMS estimated that its non-compliant reduction in drug reimbursement amounts to 340B hospitals from 2018 through 2022 resulted in those hospitals, like Baptist Medical Center South and Baptist Medical Center East, collectively losing out on $1.6 billion in reimbursements. To remedy that deviation from the statutory requirement, CMS retroactively adjusted the Medicare reimbursement rates for 2018 to 2022 to 106% of the average sales price and will pay each 340B hospital the difference between the amount that it was paid under the unlawful rates and the amount that it should have been paid under the retroactively adjusted rates.

31. Similarly, Humana's payments to Baptist Health from January 1, 2018, to September 27, 2022, were based on a Medicare reimbursement rate that did not comply with the Medicare Act. CMS has since retroactively adjusted those Medicare reimbursement rates, therefore, Humana's payments to Baptist Health from January 1, 2018, to September 27, 2022 are no longer based on the Medicare allowable amount in accordance with Medicare Advantage laws, rules and regulations as required under the Agreement. *See* Ex. 1 at Attachment A, Ex. 2 ¶¶ 1, 2. Humana's failure to adjust its reimbursement amounts based on those retroactively adjusted rates resulted in significant underpayment of the amounts required by the Agreement.

32. Baptist Health alerted Humana to its utilization of CMS's illegal rates soon after publication of the *Becerra* decision in 2022. In response to CMS publishing its proposed rule outlining potential retroactive adjustments and remedy payments in July 2023, Baptist Health again sought clarity from Humana regarding its plans to address the illegal reimbursement amounts in a letter dated September 5, 2023. Last, after CMS published its final rule to retroactively adjust its rate and pay impacted hospitals a lump sum for their damages on November 2, 2023, Baptist Health again requested that Humana commit to reimbursing the difference between what Humana

9

actually paid Baptist Health for these drugs and the amount that it should have paid under the legal and proper Provider-specific Medicare allowable rate in accordance with Medicare rules and regulations.  To date, Humana has refused to pay these damages, and its counsel has informed Baptist Health that it disputes any obligation to make such payments.

33.     Humana's refusal to act has worked a substantial windfall to Humana as it continues to hold funds provided by CMS for Humana's Medicare Advantage plans without reimbursing Baptist Health for the amounts owed to it under the Agreement.

34.     Humana's failure to pay Baptist Health the amounts owed pursuant to the Agreement constitutes a breach of the Agreement, and Humana's wrongful conduct has caused, and will continue to cause, Baptist Health harm, damage, and injury.

## COUNT I: BREACH OF CONTRACT

35.     Baptist Health incorporates paragraphs 1 – 34 above as if fully set forth herein.

36.     The Agreement is a valid and enforceable contract to which Humana agreed to be bound.

37.     Baptist Health performed its duties and obligations as required under the Agreement.

38.     Humana breached the Agreement by relying on unlawful Medicare reimbursement rates to calculate payment to Baptist Health. Humana relied on a Medicare reimbursement rate that did not comply with the Medicare statute and has now been ruled illegal by the United States Supreme Court.  CMS has now retroactively raised the rates in effect from January 1, 2018 to September 27, 2022.  If Humana had utilized the legal, retroactively adjusted Medicare allowable amount as provided in the Agreement, it would have paid Baptist Health significant additional

10

dollars for medications covered by the 340B pricing program from January 1, 2018 to September 27, 2022.

39. As a result of Humana's material breach of the Agreement, Baptist Health has been harmed.

40. Further, because of Humana's material breach of the Agreement, Baptist Health has incurred monetary damages.

WHEREFORE Baptist Health demands judgment in its favor and against Humana for actual, consequential, compensatory, and punitive damages; costs; interest; and all such other, further, and different relief in law and equity as this Court may deem appropriate.

## COUNT II: UNJUST ENRICHMENT

41. Baptist Health incorporates paragraphs 1 – 40 above as if fully set forth herein.

42. Baptist Health has conferred benefits on Humana by providing services to members of Humana's Medicare Advantage plans.

43. Humana has collected payments from CMS and premiums from its members in return for administering those plans. Humana has retained those payments without reimbursing Baptist Health under the terms of the Agreement.

44. Humana had knowledge of the benefits conferred by Baptist Health and accepted and retained those benefits.

45. The circumstances are such that it would be inequitable and unconscionable for Humana to retain the benefits conferred by Baptist Health without paying fair value for them.

WHEREFORE Baptist Health demands judgment in its favor and against Humana for actual, consequential, compensatory, and punitive damages; costs; interest; and all such other, further, and different relief in law and equity as this Court may deem appropriate.

## COUNT III: QUANTUM MERUIT

46. Baptist Health incorporates paragraphs 1 – 45 above as if fully set forth herein.

47. Baptist Health has conferred benefits and valuable services on Humana by providing services to members of Humana's health plans.

48. Humana has collected payments from CMS and premiums from its members in return for administering those plans. Humana has retained those payments without reimbursing Baptist Health under the terms of the Agreement.

49. Humana assented to, received, and enjoyed the benefits and services provided by Baptist Health.

50. In the ordinary course of common events, a reasonable entity receiving the benefits and services Baptist Health provided to Humana would normally expect to pay a reasonable amount for those benefits.

51. Baptist Health has reasonably notified Humana that Baptist Health expects to be reasonably compensated for the services it provided.

WHEREFORE Baptist Health demands judgment in its favor and against Humana for actual, consequential, compensatory, and punitive damages; costs; interest; and all such other, further, and different relief in law and equity as this Court may deem appropriate.

## Prayer for Relief

Baptist Health asks this Court to enter judgment in its favor and against Humana and award the following relief:

A. Compensatory damages in an amount to be determined by the trier of fact;

B. Punitive damages in an amount to be determined by the trier of fact;

C. Costs;

D.  Interest;

E.  Such other and further relief as the Court deems just and equitable.

## Jury Demand

Baptist demands trial by jury as to all issues so properly tried in this cause.

Dated:  January 9, 2024.                    Respectfully Submitted,


*/s/ Ty Dedmon*
Ty Dedmon (DED001)
Hillary Campbell (CHI032)
Anne Miles Golson (GOL055)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone:  (205) 521-8000
Facsimile: (205) 521-8800
tdedmon@bradley.com
hcampbell@bradley.com
agolson@bradley.com


**Defendants to be served via Certified Mail:**

Health Value Management, Inc.
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Humana Insurance Company
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Humana Health Plan, Inc.
2 North Jackson Street, Suite 605
Montgomery, AL 36104

13