## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| THE HEALTH CARE AUTHORITY FOR BAPTIST HEALTH, AN AFFILIATE OF UAB HEALTH, <br><br> Plaintiff, <br> v. <br><br> HEALTH VALUE MANAGEMENT, INC., *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **Case 2:24-cv-77-ECM-SMD** |

### BAPTIST HEALTH'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

The Health Care Authority for Baptist Health, An Affiliate of UAB Health ("Baptist Health") hereby opposes Defendants Health Value Management, Inc., Humana Insurance Company, and Humana Health Plan, Inc.'s (the "Humana Defendants" or "Humana") Motion to Dismiss the First Amended Complaint (Doc. 43) and states as follows:

### INTRODUCTION

This lawsuit poses a simple question: whether the Humana Defendants are legally obligated to reimburse Baptist Health based on the lawful, retroactively adjusted Medicare rate for certain prescription drugs. Although Baptist Health and

the Humana Defendants are parties to two agreements, it is not certain from the face of those contracts whether each of the thousands of transactions at issue fell within their scope. Thus, Baptist Health has pleaded alternative theories in order to ensure – once discovery is complete and the scope of the relevant agreements determined – that it has preserved the right to recover the appropriate reimbursement for all transactions at issue.

The United States Supreme Court has already determined that the Medicare rate upon which the Humana Defendants based their payments to Baptist Health from January 1, 2018, through September 27, 2022, was unlawful. *See Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 739 (2022). And the Centers for Medicare & Medicaid Services ("CMS") has since retroactively adjusted that Medicare rate to a higher, lawful amount. Medicare Program; Hospital Outpatient Prospective Payment System: Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018–2022, 88 Fed. Reg. 77150, 77156.

This Court must only determine, therefore, whether CMS's retroactive adjustment of that Medicare rate triggered a legal obligation for the Humana Defendants to pay Baptist Health the difference between what it actually paid based on the lower, unlawful Medicare rate and what it should have paid under the higher, retroactively adjusted rate – either under the Parties' contracts or in equity. Baptist

Health has exceeded its burden of plausibly alleging such legal obligations at this early pleading stage.

Baptist Health identified in the First Amended Complaint (the "FAC") three sources of the Humana Defendants' obligation to reimburse Baptist Health for 340B drugs:

- The parties' oldest relevant contract, the Medicare Advantage PPO Agreement to Participate[1] (the "Agreement to Participate"), applies to members enrolled in PPO Medicare Advantage plans offered by the Humana Defendants effective from 2005 through December 31, 2019, and on its face does not apply to the other types of Medicare Advantage plans that were offered by the Humana Defendants in 2018–19 (*i.e.*, HMO, PFFS, and PEEHIP plans) (Doc. 33, ¶ 41; Doc. 33-1, Attachment A);

- The parties' Letter of Intent[2] ("LOI") became effective on January 1, 2020, and states that it is "applicable … pursuant to the terms of their

---

[1] The Agreement to Participate requires that Health Value Management, Inc. d/b/a ChoiceCare Network ("ChoiceCare") and certain of its affiliates reimburse Baptist Health at a certain percentage of the "Medicare allowable amount in effect as of the date such services are rendered and in accordance with Medicare Advantage laws, rules, and regulations" for 340B drugs provided to members of Humana's PPO Medicare Advantage plans. (Doc. 33-1, Exhibit A).

[2] The LOI requires that Humana Insurance Company, Humana Health Plan, Inc., and certain of their affiliates reimburse Baptist Health for 340B drugs provided at a certain percentage "of the Provider-specific Medicare allowable rate in effect as of the date such services are rendered and in accordance with Medicare rules and regulations." (Doc. 33-2, p.1).

existing agreements" but also provides that those terms include but are "not limited to HMO, PPO, PFFS, and PEEHIP plans" (Doc. 33, ¶¶ 42–43; Doc. 33-2, ¶ 1); and

- If no contract applies to a particular transaction (depending on the type of plan that the patient enrolled in, and whether the written contracts apply to that patient's type of plan), then 42 C.F.R. § 422.100(b)(2) establishes the measure of damages under Plaintiff's equitable theories by requiring that all Medicare Advantage Organizations reimburse noncontracted providers for 340B drugs at the "amount the provider would have received under original Medicare" (Doc. 33, ¶ 33).

Accordingly, because the faces of the written agreements do not conclusively establish that all transactions over the relevant time period fall within their scope, Baptist Health must engage in the well-established practice of alternative pleading until discovery clarifies these factual questions.

Adding to the uncertainty at this early pleading stage, both the Agreement to Participate and the LOI were entered into between Baptist Health and named Humana Defendants as well as unnamed yet specifically described Humana affiliates. Likewise, Baptist Health does not yet know what Humana affiliate(s) contracted with and received the funds from CMS and premiums from members that were used to reimburse Baptist Health. In order to bring its claims against all liable

parties, including, without limitation, all parties to the pertinent agreements, Baptist Health listed seven fictitious defendants in the FAC. At the same time that it filed the FAC, Baptist Health also moved for leave to conduct discovery to identify the names of those fictitious defendants. (*See* Doc. 34). The Humana Defendants now ask the Court to simultaneously dismiss Fictitious Defendants 1–7 but prevent discovery to identify them by making contradictory assertions—that Baptist Health should already know the Humana Defendants' internal corporate structures (Doc. 43, pp. 14–15) yet such information constitutes "highly confidential and sensitive commercial information" that they should not have to produce in discovery on the grounds of trade secrets (Doc. 45, p. 2).

The Humana Defendants ignore the well-pled factual allegations in the FAC in order to repeat their initial arguments for dismissal of Baptist Health's equitable claims, punitive damages claims, and all claims against fictitious defendants. In doing so, the Humana Defendants also ask the Court to ignore Federal Rule of Civil Procedure 8's plausibility standard and instead impose a heightened pleading standard to these run-of-the-mill breach of contract, unjust enrichment, and quantum meruit claims. Despite the Humana Defendants' feigned confusion, the FAC's detailed allegations provide ample, fair notice of the elements and proof that Baptist Health intends to establish to support its claims. For these and the following reasons, the motion should be denied.

## LEGAL STANDARD

A court faced with a Rule 12(b)(6) motion to dismiss "accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  As explained by the Supreme Court, a complaint "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must only "state a claim to relief that is plausible on its face" to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Moreover, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009). Accordingly, "[p]leading inconsistent claims is not the proper basis for a 12(b)(6) motion." *Ally Fin. Inc. v. Wesley Goodson Chrysler Dodge Jeep, LLC*, 2011 WL 13228399, at *5 (N.D. Ala. Sept. 15, 2011); *see also Hurry v. Gen. Motors LLC*, 622 F. Supp. 3d 1132, 1158–

59 (M.D. Ala. 2022) (Marks, J.) (noting that "federal district courts in Alabama have declined to dismiss unjust enrichment claims where the plaintiff had also pleaded a breach of contract claim or alleged the existence of an express contract.").

## ARGUMENT

I. **Baptist Health adequately pled viable equitable claims for unjust enrichment and quantum meruit.**

The Court should deny the Humana Defendants' motion to dismiss Baptist Health's unjust enrichment and quantum meruit claims. "At the pleading stage, [the court] assess[es] only whether [Baptist Health's] allegations are 'enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1272–73 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). To survive a motion to dismiss a claim for unjust enrichment under Alabama law, a plaintiff must allege sufficient factual allegations for the court to reasonably infer that "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008). Likewise, "recovery on a theory of quantum meruit arises when a contract is implied; the law implies a promise on the party knowingly accepting the benefit of services provided by another to pay a reasonable value for those services." *Brannan & Guy, P.C. v. City of Montgomery*, 828 So. 2d 914, 920 (Ala. 2002). The FAC contains sufficient factual allegations for the court to reasonably infer each element of its equitable claims.

### A.     Baptist Health has pled cognizable elements of unjust enrichment claims in Counts III through VI. [3]

At this early pleading stage, Plaintiff is entitled to plead claims arising from the same relevant reimbursements under both express contracts and in equity.   As established in Section I.B, *infra*, federal courts in Alabama routinely decline to dismiss unjust enrichment claims simply because the plaintiff has also pleaded a breach of contract claim. *Hurry*, 622 F. Supp. 3d at 1158–59; *Cajun Steamer Venture, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1350 (N.D. Ala. 2019); *Carter v. Companion Life Ins. Co.*, 2019 WL 11637309, at *7 (N.D. Ala. Nov. 12, 2019); *Sirmon v. Wyndham Vacation Resorts, Inc.*, 2012 WL 4341819, at *6 (N.D. Ala. Sept. 18, 2012); *ANZ Advanced Techs., LLC v. Bush Hog, LLC*, 2009 WL 3415650, at *9 (S.D. Ala. Oct. 20, 2009).

So although a plaintiff "may not *recover* on both an unjust-enrichment and breach-of-contract claim based on the same facts and contract," "that does not mean that [the plaintiff] may not *plead* claims for both unjust enrichment and breach-of-contract in the alternative." *J.G. Rogers Corp. v. Metalized Carbon Corp.*, 2019 WL 1597845, at *5 (N.D. Ala. Apr. 15, 2019). Instead, "under the Rules, [a plaintiff] is free to pursue both claims for the time being to see which theory of liability has the

---

[3] The Humana Defendants' Motion to Dismiss does not argue that the elements of quantum meruit are not adequately pled in the FAC, only that they are precluded by the existence of written agreements. Accordingly, Section I.A. of the Argument is focused solely on the elements of unjust enrichment because the Humana Defendants concede that the elements of Counts VII and VIII were adequately pled.

strongest factual support." *Id.* In other words, "the fact that Plaintiff has 'alleged' the existence of an express contract in a complaint does not itself preclude [it] from simultaneously pursuing an alternative, equitable claim for unjust enrichment based on a scenario in which no express contract was formed." *Carter*, 2019 WL 11637309, at *7.

Whether an express contract precludes Baptist Health's equitable claims will turn on the specific evidence developed in discovery and is an inherently factual determination. *See United Techs. Corp.*, 556 F.3d at 1273–74 (stating that the Federal Rules of Civil Procedure permit pleading of alternative claims because "[t]hat is why we have discovery"); *see also Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*, 690 F.3d 1216, 1227–28 (11th Cir. 2012) (noting that equitable claims are viable as alternatives to a breach of contract claim and that while the plaintiff "cannot recover . . . under both [theories] . . . [it] can plead these claims in the alternative and then elect at trial under which remedy [it] wants to proceed"). Although Baptist Health may have to elect its remedy eventually—if its claims turn out to be "based on the same facts and contract," *J.G. Rogers Corp.*, 2019 WL 1597845, at *5—it need not do so now.

Moreover, a claim for unjust enrichment is not necessarily predicated on an implied contract theory. *Fed. Home Loan Mortg. Corp. v. Anchrum*, 2015 WL 2452775, at *5 (N.D. Ala. May 22, 2015). Unjust enrichment "is an equitable

remedy intended to prevent an unjust enrichment of one party to the detriment of another through mistake, fraud, coercion, breach of fiduciary duty, or other misconduct by the benefited party." *Id.* Accordingly, "some unjust enrichment claims 'clearly arise from tort injuries,' while others 'clearly arise from contract injuries.'" *Protective Life Ins. Co. v. Jenkins*, -- So. 3d --, 2023 WL 3768321, at *3 (Ala. 2023) (quoting *Auburn Univ. v. Int'l Bus. Machines, Corp.*, 716 F. Supp. 2d 1114, 1118 (M.D. Ala. 2010)). Early in the pleading stages, "it might be difficult in close cases to separate one kind of unjust-enrichment claim from another." *Auburn Univ.*, 716 F. Supp. 2d at 1118. But that distinction "requires a factual inquiry," which precludes dismissal. *Protective Life*, 2023 WL 3768321, at *3.

      i.     *Counts III, V, and VI state cognizable claims for unjust enrichment based on the benefits conferred on the Humana Defendants by Baptist Health.*

The Humana Defendants knowingly accepted and retained the benefit of Baptist Health's provision of lower cost prescription drugs to members of its Medicare Advantage Plans. Medicare Advantage Organizations ("MAOs")[4] receive set capitation payments from CMS for each of their enrolled members and, therefore, assume full prospective financial risk for providing health care services to those members (Doc. 33, ¶ 34). *See Tenet Healthsystem GB, Inc. v. Care Improvement*

---

[4] Medicare Advantage Organizations ("MAOs") are private health insurance companies that contract with CMS to provide the same benefits as Medicare Parts A and B, plus potential extra benefits, to individuals eligible for Medicare. *See generally* 42 C.F.R. 422.2.

*Plus S. Cent. Ins. Co.*, 162 F. Supp. 3d 1307, 1312 (N.D. Ga. 2106), *aff'd*, 875 F.3d 584 (11th Cir. 2017). "[B]ecause CMS payments to MAOs are fixed, MAOs bear the risk that plan expenditures will exceed plan revenues. Of course, risk is a two-way street, so when revenues exceed expenditures, MAOs keep the resulting profit." *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 880 F.3d 1284, 1292 (11th Cir. 2018) (Tjoflat, J., dissenting from denial of rehearing *en banc*). An MAO's ability to keep those profits is dependent upon, and limited by, the statutory requirement that it spend at least 85% of its total revenue on incurred claims, 42 U.S.C. § 1395w-27(e)(4), and "activities that improve health care quality," 42 C.F.R. § 422.2420(b)(1)(iii). An MAO's profits are therefore dependent, in part, upon health care providers providing services to its members.

Accordingly, unlike in other insurance contexts, *see, e.g.*, *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001), a provider confers a direct benefit upon an MAO by merely providing services to its members. *Cf. In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1298 (S.D. Fla. 2003) (holding that a provider's "satisfaction of an obligation" to provide health care services to an insured "will support a claim for unjust enrichment" against the insured's insurer).

The Humana Defendants' arguments otherwise ignore the unique characteristics of the Medicare Advantage program. The Humana Defendants rely

upon cases on one side of a split in the United States District Courts in the Southern and Middle Districts of Florida "as to whether," under Florida law, "the provision of medical treatment to an insured confers a direct benefit upon an insurer." *Fla. Emergency Physicians Kang & Assoc.s, M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1303 (S.D. Fla. 2021). But none of the cases cited by either the Humana Defendants or the Southern District of Florida involved Medicare Advantage plans, the 340B program, or Alabama law. Even so, those same Florida district courts have "found that a plaintiff's claims for unjust enrichment or quantum meruit can survive a motion to dismiss even though they are based on a benefit allegedly provided to an insurer through a healthcare provider's provision of services to an insured." *Id.*

By administering discounted drugs to members of Humana's Medicare Advantage plans, Baptist Health conferred direct benefits on Humana by fulfilling its obligation under the Agreement to Participate, LOI, and federal law; contributing to Humana's minimum medical loss ratio, *see* 42 U.S.C. § 1395w-27(e)(4); and minimizing costs. Baptist Health has therefore allowed Humana to continue to receive capitation payments from CMS and retain more of those payments and premiums from its members intended to cover care rendered by providers like Baptist Health. Humana does not dispute that Baptist Health plausibly alleged a reasonable expectation of payment, and it cannot. Humana was legally obligated to

reimburse Baptist Health according to the lawful Medicare rate pursuant to the Agreement to Participate, the LOI, and federal law. Accordingly, the Court should deny the Humana Defendants' motion to dismiss Baptist Health's unjust enrichment claims in Counts III, V, and VI.

  *ii.*   *Count IV states a cognizable claim for unjust enrichment based on the Humana Defendants' retention of funds received from CMS that are to be used for proper reimbursement of providers such as Baptist Health.*

As noted in Part I.A.i, *supra*, in arguing that Baptist Health's unjust enrichment claims should be dismissed because Baptist Health did not confer a benefit on the Humana Defendants, the Humana Defendants ignore the realities of the Medicare Advantage program—that MAOs receive funds from CMS to appropriately reimburse providers and increase their profits when they do not do so.

In Count IV, Plaintiff alleges that the Humana Defendants have received money from CMS that was intended to fund appropriate reimbursement to providers such as Baptist Health, and they have refused to do so despite notice from Baptist Health of their legal reimbursement obligations. Instead, the Humana Defendants have kept that federal funding for themselves. (*See* Doc. 33, ¶¶ 30-34, 73-77). That claim is more akin to one for conversion under Alabama law, "which is a classic tort injury," than one for breach of implied contract. *Auburn Univ.*, 716 F. Supp. 2d at 1118. Baptist Health has plausibly alleged sufficient factual allegations for the Court to reasonably infer each element of its unjust enrichment claim in Count IV.

**B.    Counts V–VIII are proper alternative claims for transactions that may (or may not) be covered by a written agreement.**

In their Motion to Dismiss, the Humana Defendants argue that every transaction involving 340B medications during the relevant time period (January 1, 2018 through September 27, 2022) were either covered by the Agreement to Participate (effective January 1, 2018 through December 31, 2019) or the LOI (effective beginning January 1, 2020). (*See* Doc. 43, p. 3). As discussed above, however, it is not certain from the face of those agreements whether they apply to all types of Medicare Advantage plans offered by the Humana Defendants from January 1, 2018 through September 27, 2022. For instance, a reading of the agreements' plain language suggests that they may only apply to "PPO" plans and not any of the other types of Medicare Advantage plans offered by the Humana Defendants. (*See* Docs. 33-1, 33-2).   Accordingly, Baptist Health pleads in the alternative that it may recover appropriate reimbursement under theories of unjust enrichment (Counts V and VI) or quantum meruit (Counts VII and VIII) for transactions falling within the term of the Agreement to Participate (Counts V and VII) or the LOI (Counts VI and VIII), respectively, if the scope of those express contracts does not reach a given transaction. (*See* Doc. 33, Counts V-VIII).

The Humana Defendants' attacks on Counts V-VIII miss the mark because alternative pleading is permitted by the Federal Rules of Civil Procedure and Eleventh Circuit precedent.  Federal Rule of Civil Procedure 8(d) "expressly permits

the pleading of both alternative and inconsistent claims." *United Techs. Corp.*, 556 F.3d at 1273; Fed. R. Civ. P. 8(d)(2)–(3). Accordingly, "federal district courts in Alabama have declined to dismiss unjust enrichment claims where the plaintiff had also pleaded a breach of contract claim or alleged the existence of an express contract." *Hurry*, 662 F. Supp. 3d at 1158–59 (Marks, J.) (collecting cases); *Cajun Steamer Venture, LLC*, 402 F. Supp. 3d at 1350 (denying motion to dismiss and allowing plaintiff to plead both breach of contract and unjust enrichment claims); *Carter*, 2019 WL 11637309, at *7 (allowing plaintiff to amend complaint to add unjust enrichment count where breach of contract claim would also be asserted); *Sirmon*, 2012 WL 4341819, at *6 (denying motion to dismiss unjust enrichment claim where breach of contract claim was also pled); *ANZ Advanced Techs., LLC*, 2009 WL 3415650, at *9 (recommending denial of motion to dismiss quantum meruit claim).   Indeed, "the fact that Plaintiff has 'alleged' the existence of an express contract in a complaint does not itself preclude [it] from simultaneously pursuing an alternative, equitable claim for unjust enrichment based on a scenario in which no express contract was formed." *Carter*, 2019 WL 11637309, at *7.  So too for a claim for quantum meruit. *See City of Bessemer v. Foreman*, 678 So. 2d 759, 761 (Ala. 1996) (holding that trial court properly instructed the jury on alternative theories of breach of contract and quantum meruit).  When a question exists as to the scope of an express contract, "it [is] for the jury to decide whether an express

15

contract exist[s], or an implied contract," and the plaintiff may "properly submit[] both alternative contract theories to the jury." *Kennedy v. Polar-BEK & Baker Wildwood Partnership*, 682 So. 2d 443, 447 (Ala. 1996); *cf. City of Bessemer*, 678 So. 2d at 761–62.

The Humana Defendants do not dispute that Baptist Health plausibly alleged a reasonable expectation of payment, and they cannot. The FAC contains factual allegations that support a reasonable inference that Humana was legally obligated to reimburse Baptist Health at a percentage of the Medicare rate for every claim that it submitted to Humana for 340B drugs provided to members of Humana's Medicare Advantage plans from January 1, 2018, through September 27, 2022. The FAC alleges three sources of that obligation: the Agreement to Participate, the LOI, and in equity. A question remains as to which source of the Humana Defendants' obligation to pay applied to each of the claims for reimbursement submitted by Baptist Health to the Humana Defendants. But Baptist Health does not have to answer that question at the pleading stage.  The Humana Defendants have not yet answered the Complaint. And it is possible that the parties may dispute the existence, scope, or validity of an express contract between each of the Humana Defendants and Baptist Health during the relevant times.

"[A]t the pleading stage," Baptist Health "could not possibly have had access to the inside [Humana] information necessary to prove conclusively—or even plead

with greater specificity—the factual basis for holding [the Humana Defendants] liable" for their failure to reimburse Baptist Health according to the retroactively adjusted Medicare rate under a breach of contract, unjust enrichment, or quantum meruit theory. *See United Techs. Corp.*, 556 F.3d at 1272–73. Baptist Health does not have access to the Humana Defendants' claims and payment data and cannot know with certainty whether the Humana Defendants processed as "covered services" every claim submitted to them by Baptist Health for 340B drugs provided to members of each of the Humana Defendants' Medicare Advantage plans from January 1, 2018, through September 27, 2022. Likewise, Baptist Health cannot know at this stage whether the Humana Defendants will contend that the pertinent agreements do not govern certain transactions or apply to particular defendants. "That is why we have discovery." *Id.* Because Baptist Health "is at a clear informational disadvantage" at the pleading stage, its factual allegations must only raise its equitable claims "above the speculative level." *Id.* Humana was legally obligated to reimburse Baptist Health according to the lawful Medicare rate pursuant to the Agreement to Participate, the LOI, and federal law. The FAC plausibly alleges that obligation and Baptist Health's reasonable expectation of payment for each equitable claim. Accordingly, the Court should deny the Humana Defendants' motion to dismiss Baptist Health's equitable claims in Counts V–VIII.

**II.     Baptist Health may be entitled to punitive damages under Alabama law.**

The Humana Defendants' argument that Baptist Health's claims for punitive damages should be dismissed "because punitive damages are not available in actions sounding in breach of contract" (Doc. 43, p.12) assumes that the Court will dismiss each of Baptist Health's equitable causes of action and ignores Alabama law recognizing the possibility of punitive damage awards for the claims pleaded in the FAC.

Baptist Health has pleaded equitable claims for unjust enrichment and quantum meruit for which punitive damages may be available under Alabama law. *See, e.g.*, *Horn v. Brown*, 4 So. 3d 1106, 1109-10 (Ala. 2008) (holding there was no final judgment because "there remain[ed] a pending request for punitive damages on [plaintiff's] claims of conversion and unjust enrichment"); *Leigh King Norton & Underwood, LLC v. Regions Fin. Corp.*, 497 F. Supp. 3d 1098, 1107–08 (N.D. Ala. 2020) (holding that "a factfinder could award [plaintiff] meaningful relief in the form of punitive damages" on, among others, its unjust enrichment claim). Unjust enrichment "is an equitable remedy intended to prevent an *unjust* enrichment of one party to the detriment of another through mistake, fraud, coercion, breach of fiduciary duty, or other misconduct by the benefited party." *Fed. Home Loan Mortg. Corp.*, 2015 WL 2452775, at *5 (emphasis in original). Likewise, "[a]lthough the remedy of *quantum meruit* was developed as part of the common law of contracts to

avoid unjust enrichment under a contract implied by law, equitable considerations influence the determination of whether recovery is warranted in a given case." *U.S. for Use & Ben. of E. Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 781 (11th Cir. 1990). Accordingly, punitive damages may be available on unjust enrichment and quantum meruit claims. *See Leigh King Norton & Underwood, LLC*, 497 F. Supp. 3d at 1107–08.

As explained above, Baptist Health's claims are not solely contractual. Baptist Health alleges that it notified the Humana Defendants of their obligation to reimburse Baptist Health at the lawful Medicare rate for 340B drugs, and Humana refused. (Doc. 33, ¶ 47). The Humana Defendants instead retained the benefits conferred upon them by Baptist Health without adequately reimbursing Baptist Health with the funds provided to them by CMS and their members to cover services provided to those members. (Doc. 33, ¶¶ 65–69, 73–76, 80–83, 87–90, 94–97, 101–104). Accordingly, "a factfinder could award [Baptist Health] meaningful relief in the form of punitive damages" on its unjust enrichment and quantum meruit claims. *See Leigh King Norton & Underwood, LLC*, 497 F. Supp. 3d at 1107–08.

### III. The FAC contains detailed descriptions of the fictitious parties sufficient to provide notice of their identities.

The FAC describes the fictitious defendants with sufficient specificity to satisfy the Eleventh Circuit's standard for fictitious party pleading. Fictitious party pleading is permissible "[w]hen a party is ignorant of the identity/name of an

opposing party at the time a complaint is filed," but the complaint can be "amended later via substitution of the opposing party's true identity/name once discovered." *Ray v. Estate of Gray*, 2019 WL 2330277, at *2 (N.D. Ala. May 31, 2019). Indeed, "district courts within the Eleventh Circuit have allowed plaintiffs to plead fictitious defendants when they can be easily identified through discovery." *Taylor v. Brooks*, 2020 WL 3129862, at *2 (N.D. Ala. June 12, 2020) (collecting cases).[5]

The FAC alleges that Fictitious Defendants 1–7 are real affiliates of ChoiceCare, Humana Insurance, and Humana Health Plan. Fictitious Defendants 1–7 are unknown to Baptist Health but can easily be identified by the Humana Defendants. The Humana Defendants do not—and plausibly cannot—argue otherwise. Indeed, the FAC describes each of the fictitious defendants with specificity, identifying the role each has within Humana's corporate structure as well as within Humana's Medicare Advantage Plans.

**Fictitious Defendants 1, 2, and 3.** The Agreement to Participate imposes contractual obligations upon certain affiliates of ChoiceCare defined as "Payors"

---

[5] When "[t]he fictitious defendants originally pled are real persons whose names are unknown by plaintiff, but persons who can easily be identified by defendant," the district court may grant the plaintiff leave to file "narrowly tailored" early discovery "designed to uncover the identity of those individuals." *Id.* at *3. Baptist Health has sought to do just that. In opposing these efforts, the Humana Defendants argue that the identities of their affiliates described in the Agreement to Participate and LOI constitute "highly confidential and sensitive commercial information, which Defendants consider a trade secret" (Doc. 45, ¶ 2). Yet the Humana Defendants simultaneously argue that Baptist Health "has offered no explanation in the Amended Complaint as to why it is unable to specifically name the legal entities it seeks to bring in as defendants." (Doc. 43 at 15).

therein. (*See* Doc. 33, ¶ 37; Doc. 33-1, § 1). Specifically, the Agreement to Participate obligates "Payor(s)" to "process claims for covered services" and "make payments to Provider, as applicable, on a timely basis using Payor's normal claims processing policies, procedures and guidelines and in accordance with the applicable state or federal laws, rules or regulations regarding the timeliness of claims payments." (Doc. 33-1, § 5(b); Doc. 33, ¶ 39). "Payors" are defined under the Agreement to Participate as "third party payor(s)…issuing and administering the Plans." (Doc. 33-1, § 1; Doc. 33, ¶ 38). Determining that such "Payors" needed to be named because of their contractual obligations but unaware of their identities, Baptist Health named Fictitious Defendant 1, defining it pursuant to the Agreement to Participate as "any other affiliate of Defendant ChoiceCare that issued and/or underwrote Medicare Advantage plans to members who received 340B medications from Baptist Health." (Doc. 33, ¶ 9). Likewise, under the same reasoning, Baptist Health named Fictitious Defendant 2, defining it pursuant to the Agreement to Participate as "any other affiliate of Defendant ChoiceCare that administered Medicare Advantage plans to members who received 340B medications from Baptist Health." (*Id.*, ¶¶ 9, 10). Finally, determining that the entity that actually paid Baptist Health also needed to be named because of its contractual obligations and potential to have been unjustly enriched by underpaying Baptist Health, Baptist Health named Fictitious Defendant 3, defining it as "the affiliate of Defendant ChoiceCare that

remitted payment to Baptist Health for claims covering 340B medications received by members of Humana's Medicare Advantage Plans between January 1, 2018 and January 1, 2020." (Doc. 33, ¶ 11). Such entities are easily identifiable by the Humana Defendants and specifically defined by the relevant agreement.[6]

**Fictitious Defendants 5, 6, and 7**. Like the Agreement to Participate, the LOI creates contractual obligations and by its terms "is applicable to" Baptist Health "providing services to the Humana Medicare Advantage members, . . . pursuant to the terms of their existing agreements with Humana Insurance Company, Humana Health Plan, Inc., and their affiliates that underwrite or administer health plans." (Doc. 33-2). Determining that the parties to the LOI and all parties upon whom the LOI created obligations needed to be named but unaware of their identities, Baptist Health named Fictitious Defendant 5 pursuant to the LOI as "any other affiliate of Defendants Humana Insurance or Humana Health Plan" that "issued and/or underwrote Medicare Advantage plans to members who received 340B medications from Baptist Health" (Doc. 33, ¶ 13), Fictitious Defendant 6 as "any other affiliate of Defendants Humana Insurance or Humana Health Plan" that "administered Medicare Advantage plans to members who received 340B medications from Baptist

---

[6] The Humana Defendants further argue that Baptist Health "has failed to even identify the alleged patients and claims at issue." (Doc. 43, p.15). Of course, it is well-settled that Baptist Health need not provide such detailed factual allegations at the pleading stage. *Iqbal*, 556 U.S. at 678. Nonetheless, Baptist Health *has* identified the specific claims at issue: *all* of "Humana's payments to Baptist Health from January 1, 2018, to September 27, 2022" based on the unlawful Medicare rate. (Doc. 33, ¶ 46).

Health" (*id.*, ¶ 14), and Fictitious Defendant 7 as "any other affiliate of Defendants Humana Insurance or Humana Health Plan" that "remitted payment to Baptist Health for claims covering 340B medications received by members of Humana's Medicare Advantage plans between January 1, 2020 and September 27, 2022" (*id.*, ¶ 15). Such entities are easily identifiable by the Humana Defendants and specifically defined by the relevant agreement.

**Fictitious Defendant 4.**   Finally, the Agreement to Participate states that its terms are subject to and dependent upon "Payor's contract with the Centers for Medicare and Medicaid Services." (Doc. 33-1, §§ 5(a), 9(d), 9(h)).  Moreover, as explained *supra*, the entity receiving payments from CMS has been unjustly enriched.  The FAC accordingly defines Fictitious Defendant 4 as "any other affiliate of Defendants ChoiceCare, Humana Insurance, or Humana Health Plan that either contracted with or received money from the Centers for Medicare & Medicaid Services to offer Medicare Advantage plans between January 1, 2018 and September 27, 2022." (Doc. 33, ¶ 12).  Once again, identifying that entity is an easy task for the Humana Defendants.

The FAC identifies each fictitious defendant with specificity and relies on descriptions contained in the Agreement to Participate and LOI. If the Court grants Baptist Health targeted discovery to identify the names of those fictitious defendants (*see* Doc. 34), then Baptist Health can easily substitute the names of the fictitious

defendants in the FAC without substantively amending the allegations contained therein.  Accordingly, the Court should deny the Humana Defendants' motion to dismiss the claims against fictitious defendants and grant Baptist Health's motion for leave to conduct discovery (Doc. 34).

## CONCLUSION

For these reasons, the Court should deny the motion to dismiss.

Dated: July 2, 2024.                          Respectfully Submitted,

*/s/ Ty Dedmon*
Ty Dedmon (ASB-4832-Y79D)
Hillary Campbell (ASB-5189-G82E)
Anne Miles Golson (ASB-1694-V69D)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone:  (205) 521-8000
Facsimile: (205) 521-8800
tdedmon@bradley.com
hcampbell@bradley.com
agolson@bradley.com

*Attorneys for Plaintiff Baptist Health*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David W. Long-Daniels
Squire Patton Boggs (US) LLP
One Atlantic Center
1201 W. Peachtree St. NW, Suite 3150
Atlanta, GA 30309
david.long-daniels@squirepb.com

Kimberly J. Donovan
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard, Suite 4700
Miami, FL 33131
kimberly.donovan@squirepb.com

Ima E. Nsien
Squire Patton Boggs (US) LLP
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071
ima.nsien@squirepb.com

*/s/ Ty Dedmon*
OF COUNSEL